Filed 11/23/20  In re O.G. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re O.G. et al., Persons Coming Under the Juvenile Court Law. | C091307 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>T.D.,<br><br>    Defendant and Appellant. | (Super. Ct. Nos. JD238321, JD238322) |

Appellant T.D., mother of the minors, appeals from the juvenile court's orders terminating parental rights and freeing the minors for adoption.  (Welf. & Inst. Code, §§ 366.26, 395.)[1]  Her sole contention on appeal is that the juvenile court employed an

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

1

incorrect analysis in finding the beneficial parental relationship exception to adoption does not apply in this case. We shall affirm.

BACKGROUND

We dispense with a detailed recitation of the factual and procedural background as it is unnecessary to the resolution of this appeal. We set forth additional relevant facts in the Discussion.

On July 31, 2017, the Sacramento County Department of Child, Family and Adult Services (Department) filed section 300 petitions on behalf of the then one- and two-year-old minors based on parents' ongoing substance abuse. The petitions were subsequently amended to include allegations of ongoing domestic violence between the parents. The minors were taken into protective custody on July 31, 2017, and, in November 2017, placed in their current foster home where they remained throughout these proceedings.

The juvenile court took jurisdiction, declared the minors dependents of the court, and ordered family services for parents. Having dismissed the substance abuse allegation in the petitions relating to father, the juvenile court initially ordered the minors placed with father on the condition mother move out of the family home. Prior to the minors' return to father's custody, however, the Department filed section 387 supplemental petitions and the minors were again ordered detained. The petitions were sustained, the minors were ordered to remain in out-of-home placement with reunification services provided.

Parents failed to reunify with the minors and a section 366.26 hearing was held in November 2019. The juvenile court took the matter under submission and issued its orders on January 3, 2020. The juvenile court found both minors adoptable, rejected mother's arguments that the beneficial parental relationship exception or sibling exception to adoption applies in this case, and terminated parental rights.

DISCUSSION

Mother contends the matter must be remanded for a new hearing because the juvenile court did not make the necessary findings when it determined the beneficial parental relationship exception to adoption does not apply in this case. We disagree.

At the selection and implementation hearing held pursuant to section 366.26, a juvenile court must choose one of the several " 'possible alternative permanent plans for a minor child. . . . *The permanent plan preferred by the Legislature is adoption.* [Citation.]' [Citations.] If the court finds the child is adoptable, it *must* terminate parental rights absent circumstances under which it would be detrimental to the child." (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368.)

There are only limited circumstances which permit the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child." (§ 366.26, subd. (c)(1)(B).) Such circumstances include when "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(1) [beneficial parental relationship exception].)

To prove that the beneficial parental relationship exception applies, the parent must show there is a significant, positive emotional attachment between the parent and child. (*In re Beatrice M.* (1994) 29 Cal.App.4th 1411, 1418-1419.) And even if there is such a bond, the parent must prove that the parental relationship " 'promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.' " (*In re S.B.* (2008) 164 Cal.App.4th 289, 297, quoting *In re Autumn H.* (1994) 27 Cal.App.4th 567, 575; accord, *In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1345.) "In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H., supra*, at

p. 575.)  On the other hand, " '[w]hen the benefits from a stable and permanent home provided by adoption outweigh the benefits from a continued parent/child relationship, the court should order adoption.' "  (*In re Jasmine D., supra*, at p. 1350; *In re Autumn H.,* at p. 575.)

The party claiming the exception has the burden of establishing the existence of any circumstances that constitute an exception to termination of parental rights.  (*In re C.F.* (2011) 193 Cal.App.4th 549, 553.)  The factual predicate of the exception must be supported by substantial evidence, but the juvenile court exercises its discretion in weighing that evidence and determining detriment.  (*In re K.P.* (2012) 203 Cal.App.4th 614, 622; *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314-1315.)

Here, the juvenile court correctly stated that the parents had to establish two prongs, i.e., that the parents maintained regular visitation and whether the benefit to the minors of continued contact with the parents outweighs the benefits of adoption.  (*In re I.R.* (2014) 226 Cal.App.4th 201, 212 ["court correctly stated that the parents had to establish two prongs"].)  It expressly found the parents had *not* maintained regular visitation.  It also indicated it had considered factors relating to whether the parent-child relationship was important and beneficial in this case.  It also expressly considered whether maintaining the parent-child relationship in this case outweighed the benefits of adoption and concluded it did not.

Mother argues that since a showing that the children would benefit from continuing the parent-child relationship requires she prove both a significant positive emotional attachment between the parent and children *and* that the benefit of maintaining that relationship outweighs the benefits of adoption, the second prong is, in actuality, two separate prongs requiring the juvenile court make separate findings for each element.  Even allowing for mother's interpretation of the test as a three-prong test, rather than a two-prong test, we fail to see the error here.  The juvenile court expressly considered (1) whether the parents maintained regular contact, (2) the quality and nature of the parent-child relationship, and (3) whether the benefit of maintaining the parent-child relationship outweighed the benefits of adoption.

4

Moreover, mother could have suffered no prejudice from the manner in which the juvenile court made its findings. Mother did not establish the first element of the exception because the evidence showed, and the juvenile court found, that she did not visit the minors regularly throughout the proceedings.

The minors have been out of parental custody since July 31, 2017. The Department's September 2017 report stated parents were receiving visits, however, they had cancelled visits on August 18, August 22, and September 1, 2017. It was further reported that the foster family agency social worker had been unable to contact the parents to schedule visits. The Department's February 2018 report noted parents had cancelled or not shown up for visits on December 13, 2017, December 29, 2017, January 4, January 5, January 8, and February 14, 2018. The Department's April 2018 report again noted that parents' visits with the minors were inconsistent. In August 2018, it was reported that parents were given permission to have two phone calls with the minors each week and could call at any time, but parents called the minors only "about two times per month." Parents continued to be permitted visits two times per week for a period of two hours each. Parents, however, failed to show or cancelled visits on September 13, October 4, October 8, October 18, October 29, November 15, November 22, and November 29, 2018. On May 20, 2019, the Department reduced parents' visits to every other week due to their failure to consistently visit and the permanent goal of adoption.

The juvenile court expressly found parents had not consistently visited the minors during the reunification period. That finding is supported by the record. Because mother failed to establish the first element of the exception, her contention that the second element of the exception must itself be analyzed as two separate elements by the juvenile court, and her contention that the juvenile court did not do so, is without consequence.

5

## DISPOSITION

The orders of the juvenile court (terminating parental rights) are affirmed.


                                                    KRAUSE           , J.


We concur:


      BLEASE         , Acting P. J.


      HOCH         , J.